**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LUMIO HOLDINGS, INC., *et al.*,[1]<br><br>                      Debtors. | Chapter 11<br><br>Case No. 24-11916 (__)<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR
DISCONTINUING UTILITY SERVICES, (II) APPROVING PROPOSED
ADEQUATE ASSURANCE OF PAYMENT TO UTILITY PROVIDERS AND
AUTHORIZING DEBTORS TO PROVIDE ADDITIONAL ASSURANCE,
(III) ESTABLISHING PROCEDURES TO RESOLVE REQUESTS FOR
ADDITIONAL ASSURANCE AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned counsel, respectfully moves (the "Motion") as follows:

**RELIEF REQUESTED**

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order" and, together with the Interim Order, the "Proposed Orders"): (i) prohibiting Utility Providers (as defined below) from altering, refusing, or discontinuing services or discriminating against the Debtors solely on the basis of the commencement of these cases or that the Debtors did not pay a debt when due prepetition; (ii) determining that the Debtors have provided each of the Utility Providers with "adequate assurance of payment" within the meaning of section 366 of title 11 of the United States Code (the "Bankruptcy Code") based on the Debtors establishing a segregated account in the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, are Lumio Holdings, Inc. (7119) and Lumio HX, Inc. (7401). The Debtors' headquarters is located at 1550 W Digital Drive, Suite 200, Lehi, UT 84043.

amount of $8,503 which is equal to the Debtors' estimate of two weeks of postpetition Utility Services (as defined below) based on the monthly average of all Utility Services; (iii) establishing procedures (the "Additional Assurance Procedures") for the provision of additional adequate assurance of payment, if any, to the Utility Providers; and (iv) granting related relief.

## JURISDICTION

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these chapter 11 cases (these "Chapter 11 Cases") and this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these cases and the Motion is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order with respect to this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.      The statutory bases for the relief requested herein are sections 105(a), 363 and 366 of the Bankruptcy Code, as supplemented by rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

5.      On September 3, 2024 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors continue to manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of

2

the Bankruptcy Code. No trustee, examiner, or official committee has been appointed in these cases.

6. The Debtors are the largest privately held residential solar provider that is fully vertically integrated with a full suite of photovoltaic solar system sales, installation and operations. The Debtors' fully integrated model allows them to control every interaction with their customers to ensure superior service.

7. Additional detail regarding the Debtors, their business, the events leading to the commencement of these Chapter 11 Cases, and the facts and circumstances supporting the relief requested herein is set forth in the *Declaration of Jeffery T. Varsalone in Support of Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), filed concurrently herewith and incorporated herein by reference.

## THE DEBTORS' UTILITY SERVICES

8. In the ordinary course of business, the Debtors obtain water, gas, electric, waste management (including sewer and trash), internet, and other utility services (the "Utility Services") from several utility providers (collectively, the "Utility Providers"). The Debtors estimate that, as of the Petition Date, 73 Utility Providers provide Utility Services to the Debtors. The Utility Providers provide services for the Debtors' headquarters located in Utah, remaining warehouse located in Texas, sales offices and employee housing located in various states. The Utility Providers include, without limitation, the entities identified on the list attached to this Motion as **Exhibit C** (the "Utility Providers List").[2]

---

[2] Although the Debtors have endeavored to identify all Utility Providers and list them on the Utility Providers List, inadvertent omissions may have occurred, and the omission from the Utility Providers List of any entity providing Utility Services to the Debtors shall not be construed as an admission, waiver, acknowledgement, or consent that section 366 of the Bankruptcy Code does not apply to such entity. In addition, the Debtors reserve the right to assert that any of the entities now or hereafter included on the Utility Providers List are not "utilities" within the meaning of section 366(a) of the Bankruptcy Code. To the extent that any entity is added or removed from the

3

9. In general, the Debtors have established a good payment history with their Utility Providers, making regular and timely payments. Over the past year, the Debtors have paid an average of approximately $17,006 per month on account of all Utility Services related to the go-forward locations of the Debtors. To the best of the Debtors' knowledge, there are generally no material defaults or arrearages with respect to undisputed invoices for the Utility Services provided at the Debtors' facilities as of the Petition Date.

10. Uninterrupted access to the Utility Services is essential to the Debtors' ongoing business operations and the overall success of these Chapter 11 Cases. The Debtors' business operations require uninterrupted electricity, internet, water, and other utility services to operate. Specifically, the Debtors must maintain constant communication to their customers to properly serve their needs, which required a dependable provision of Utility Services. Additionally, the Utility Services are essential for the Debtors to operate their corporate offices and other facilities, including their sales offices, employee housing locations, and remaining warehouse. Any interruption of the Utility Services, even for a brief period of time, would disrupt the Debtors' day-to-day operations and adversely affect customer goodwill and employee and salesperson relations, which, in turn, would jeopardize the Debtors' sale and fulfillment efforts. Accordingly, it is essential that the Utility Services remain uninterrupted during these Chapter 11 Cases.

11. Pursuant to the lease for the Debtors' headquarters, certain Utility Services are billed directly to the Debtors' landlord (the "HQ Landlord") and paid by the Debtors as part of the Debtors' lease payments. All other Utility Services are paid by the Debtors through Paysmart

---

Utility Providers List, the Debtors will provide notice to such entity in accordance with the procedures set out in this Motion.

USA, LLC (the "Aggregator"), which processes all amounts owed by the Debtors on account of the Utility Services and issues an invoice to the Debtors. The Debtors then pay the Aggregator a lump sum for the covered Utility Services and the Aggregator distributes the appropriate amounts to each Utility Provider. The relief requested herein is with respect to all Utility Providers supplying Utility Services to the Debtors. The Debtors request the authority to pay any amounts owed on account of the Utility Services in the ordinary course of business in accordance with prepetition practices.

12. The Debtors have also filed the *Debtors' First Omnibus Motion for an Order (I) Authorizing the Debtors to (A) Reject Certain Unexpired Leases* Nunc Pro Tunc *to the Petition Date, and (B) Abandon Certain Personal Property that Remains at the Leased Premises, and (II) Granting Related Relief* (the "Lease Rejection Motion") contemporaneously herewith. Pursuant to the Lease Rejection Motion, the Debtors seek to reject 21 non-residential real property leases. The Debtors have accounted for the rejection of these locations and the discontinuation of the accompanying Utility Services in determining the amount to be held in the segregated account funded pursuant to this Motion.

## PROPOSED ADEQUATE ASSURANCE

13. Consistent with section 366(c)(1)(A) of the Bankruptcy Code, which defines the phrase "assurance of payment" to include, among other things, a cash deposit, the Debtors propose to deposit, within 20 days of the Petition Date, an amount equal to the estimated cost for two (2) weeks of Utility Services (here, approximately $8,503) (the "Adequate Assurance Deposit"), calculated based on the historical data for the past year, into one segregated bank account (the "Utility Deposit Account") designated for the Adequate Assurance Deposit for the benefit of all Utility Providers. Thereafter, the Debtors propose to adjust the amount in the Utility

Deposit Account as follows: (i) reducing the amount held in the Utility Deposit Account to account for the payment and termination of Utility Services by the Debtors for any given account; (ii) modifying the amount held in the Utility Deposit Account on the basis of agreements reached with Utility Providers regarding Additional Assurance Requests (as defined below), including, to the extent any Utility Provider receives any other value from the Debtors as adequate assurance of payment, reducing the Adequate Assurance Deposit maintained in the Utility Deposit Account on account of such Utility Provider by the amount of such other value; and (iii) adding additional amounts in the event that the Debtors amend the Utility Providers List to add one or more additional Utility Providers.  These adjustments will permit the Debtors to maintain the Utility Deposit Account with an amount that consistently provides the Utility Providers with a two-week deposit on account of such services.

14. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for postpetition utility services in the ordinary course through access to postpetition financing or funds received in the ordinary course of their business (together, the "<u>Proposed Adequate Assurance</u>"), constitutes adequate assurance to the Utility Providers to satisfy the requirements of section 366 of the Bankruptcy Code.  If any Utility Provider believes additional assurance ("<u>Additional Assurance</u>") is required, the Debtors propose that such Utility Provider be required to request such Additional Assurance by following the Additional Assurance Procedures described below.

### **ADDITIONAL ASSURANCE PROCEDURES**

15. Although the Debtors recognize the right of the Utility Providers to evaluate the Proposed Adequate Assurance on a case-by-case basis, in light of the severe consequences that would result from any interruption in the Debtors' Utility Services, the Debtors propose that the

Court approve and adopt the following Additional Assurance Procedures as the exclusive means by which a Utility Provider may request Additional Assurance:

(a) Absent compliance with the Additional Assurance Procedures, no Utility Provider may alter, refuse or discontinue service to or otherwise discriminate against the Debtors on account of the commencement of these Chapter 11 Cases or any unpaid prepetition charges, or request payment of a deposit or receipt of other security in connection with any unpaid prepetition charges.

(b) The Debtors will serve copies of the Motion and the interim order via first-class mail, within three (3) business days after the date that the interim order is entered by the Court on all Utility Providers identified on the Utility Providers List. In the event that any Utility Provider has been omitted from the Utility Providers List, the Debtors will supplement the Utility Providers List and promptly serve copies of the Motion and the interim order on such Utility Provider upon learning of such omission.

(c) The Debtors will deposit the Adequate Assurance Deposit into the Utility Deposit Account within twenty (20) days of the Petition Date. In the event of a postpetition default and payment, each Utility Provider shall be entitled to the funds in the Utility Deposit Account in the amount set forth for such Utility Provider in the column labeled "Adequate Assurance Deposit" on the Utility Providers List.

(d) Any Utility Provider desiring Additional Assurance must serve a written request (an "Additional Assurance Request") on: (i) the Debtors, Lumio Holdings, Inc., 1550 W Digital Drive, Suite 200, Lehi, UT 84043, Attn: Jeffrey T. Varsalone (jvarsalone@vrsrestructuring.com); (ii) proposed counsel to the Debtors, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, Delaware, 19801, Attn: Robert J. Dehney, Sr., Esq. (rdehney@morrisnichols.com), Matthew B. Harvey, Esq. (mharvey@morrisnichols.com) and Matthew O. Talmo, Esq. (mtalmo@morrisnichols.com); (iii) counsel to the proposed debtor in possession financing lender, (a) Davis Polk & Wardell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Darren S. Klein, Esq. (darren.klein@davispolk.com) and Joanna McDonald, Esq. (joanna.mcdonald@davispolk.com) and (b) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: Amanda R. Steele (steele@rlf.com), Mark D. Collins (collins@rlf.com) and James F. McCauley (mccauley@rlf.com); (iv) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King St., Lockbox 35, Wilmington, DE 19801 (Attn: Joseph Cudia, Esq. (joseph.cudia@usdoj.gov) and Fang Bu, Esq. (fang.bu@usdoj.gov)); and (v) any statutory committee appointed in these Chapter 11 Cases (the "Notice Parties").

(e) Any Additional Assurance Request must: (i) be made in writing; (ii) set forth the type of Utility Service(s) provided and the applicable account number(s); (iii) include a summary of the Debtors' payment history relevant to each affected

7

        account, including any security deposits; and (iv) include a proposal for what the Utility Provider believes would constitute adequate assurance from the Debtors, along with an explanation as to why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of postpetition payment in light of the circumstances.

(f)     Upon the Debtors' receipt of an Additional Assurance Request at the addresses set forth above, the Debtors shall have until (i) the greater of fourteen (14) days from receipt of the request or thirty (30) days from the Petition Date or (ii) such other date as the parties mutually agree (the "<u>Resolution Period</u>") to negotiate with such Utility Provider to resolve such Utility Provider's request for additional assurance of payment.

(g)     The Debtors may, in their discretion, resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court, and may, in connection with any such agreement, in their discretion, provide a Utility Provider with Additional Assurance in the form of, but not limited to, cash deposits, prepayments and/or other forms of security, without further order of this Court if the Debtors and the Utility Provider believe such Additional Assurance is reasonable.  To the extent any Utility Provider receives any other value from the Debtors as adequate assurance of payment, the Debtors may reduce the Adequate Assurance Deposit maintained in the Utility Deposit Account on account of such Utility Provider by the amount of such other value upon notice to the Utility Provider.

(h)     If the Debtors determine that an Additional Assurance Request is not reasonable and/or it is not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtors will schedule a hearing (the "<u>Determination Hearing</u>") before this Court on the next scheduled omnibus hearing date or as otherwise agreed by the parties or ordered by the Court to determine the adequacy of assurances of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code.

(i)     During any Resolution Period, and, if applicable, pending the outcome by final order of any Determination Hearing, the relevant Utility Provider shall be restrained from discontinuing, altering or refusing service to the Debtors on account of: (i) unpaid charges for prepetition services; (ii) a pending Additional Assurance Request; (iii) any objections filed in response to the Proposed Adequate Assurance or to the Additional Assurance Procedures; or (iv) the commencement of these Chapter 11 Cases.

(j)     Unless and until an order of the Court is entered requiring further assurance of payment, each Utility Provider shall be deemed to have adequate assurance of payment based on the establishment of the Proposed Adequate Assurance.

16. The Additional Assurance Procedures set forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtors to administer their estates without undue distraction or interruption. Absent compliance with the Additional Assurance Procedures, the Debtors request that the Utility Providers, including Utility Providers that begin providing services to the Debtors during the pendency of this case, be forbidden from altering, refusing, or discontinuing service or requiring additional assurance of payment other than the Proposed Adequate Assurance.

**SUBSEQUENT ADDITIONS TO THE UTILITY PROVIDERS LIST**

17. The Debtors have made a good-faith effort to identify their Utility Providers and include them on the Utility Providers List. Nonetheless, to the extent that the Debtors subsequently identify additional Utility Providers or if a Utility Provider begins or ceases to provide services to the Debtors during the pendency of this case, the Debtors seek authority, in their discretion, to amend the Utility Providers List to add or remove any Utility Provider before or after entry of any interim or final order approving the Motion. Any such amended Utility Providers List will be filed with the Court.

18. The Debtors further request that the Court's order(s) on this Motion be deemed to apply to any such subsequently identified Utility Provider, regardless of when such Utility Provider is added to the Utility Providers List. The Debtors will cause a copy of this Motion and any orders hereon to be served on any such Utility Provider subsequently added to the Utility Providers List and will deposit an amount equal to two (2) weeks of the Debtors' average cost of utility services in the Utility Deposit Account for the benefit of such Utility Provider (less any amounts on deposit with any such subsequently added Utility Provider that exceed outstanding prepetition amounts). Subsequently added Utility Providers shall be required to make Additional Assurance Requests, if any, in accordance with the Additional Assurance Procedures. For any

Utility Provider that is subsequently removed from the Utility Providers List, the Debtors request the authority to decrease the Adequate Assurance Deposit by an amount equal to two weeks of the Debtors' average cost of services from such removed Utility Provider.

19. For the avoidance of doubt, the Debtors request that any order(s) approving this Motion be binding on all Utility Providers, regardless of whether such Utility Provider is presently identified on the Utility Providers List.

20. Finally, the Debtors request that their obligation to maintain the Adequate Assurance Deposit terminate upon the earlier of: (i) the sale of all or substantially all of the Debtors' assets; (ii) the effective date of a chapter 11 plan; or (iii) the date these cases are dismissed or converted to chapter 7 of the Bankruptcy Code.

## BASIS FOR RELIEF

21. Congress enacted section 366 of the Bankruptcy Code to protect a debtor from immediate termination of utility services after filing for bankruptcy, while at the same time providing utility companies with adequate assurance of payment for postpetition utility services. *See* H.R. REP. No. 95-595, at 350 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, section 366 of the Bankruptcy Code prohibits utilities from altering, refusing, or discontinuing services to a debtor solely on account of unpaid prepetition amounts, and provides the debtor with a period in which to establish adequate assurance of postpetition payment. *See* 11 U.S.C. §§ 366(a)–(c).

22. Section 366(c) requires only that a utility's assurance of payment be "adequate." Courts recognize that adequate assurance of payment does not constitute an absolute guarantee of a debtor's ability to pay. *See, e.g.*, *In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . 'a Bankruptcy Court is not required to give a utility company the equivalent of a guarantee of

payment, but must only determine that the utility is not subject to any unreasonable risk of nonpayment for postpetition services.'") (quoting *In re Adelphia Bus. Sols., Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002)); *see also In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) (noting that section 366(b) "does not require an 'absolute guarantee of payment'" (citation omitted)), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997).

23. In determining the necessary level of assurance, courts have recognized that bankruptcy courts should "focus 'upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Va. Elec. & Power Co.*, 117 F.3d at 650 (quoting *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)) (emphasis in original); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming bankruptcy court's ruling that utility deposits were not necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected"). Indeed, "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full." *In re The Great Atl. & Pac. Tea Co.*, 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (citations omitted). In fact, there is nothing to prevent a court from deciding that, on the facts of the case before it, the amount required of the debtor to provide adequate assurance of payment to a utility company should be nominal or even zero. *See, e.g.*, *In re Pac-West Telecomm., Inc.*, No. 07-10562 (BLS) (Bankr. D. Del. May 2, 2007) (approving adequate assurance in the form of one-time supplemental prepayment to each utility company equal to prorated amount of one week's charge).

24. Based upon the foregoing, the Debtors believe that most, if not all, of their Utility Providers have adequate assurance of payment even without recourse to the Adequate Assurance Deposit. The Debtors anticipate having sufficient liquidity to pay, and intend to pay, all valid postpetition obligations for Utility Services in a timely manner based on revenues generated from the operation of their business and access to postpetition financing. In addition, the Debtors' reliance on Utility Services for the preservation of value of their assets provides them with a powerful incentive to stay current on their obligations. These factors, which the Court may consider when determining the amount of any adequate assurance, justify finding that the Debtors are not required to make any additional assurances in these Chapter 11 Cases. In light of the foregoing, the Debtors respectfully submit that the Proposed Adequate Assurance is more than sufficient to assure the Utility Providers of payment for postpetition services.

25. Under the circumstances of this case, the establishment of a cash reserve in the form of the Adequate Assurance Deposit constitutes adequate assurance of payment under section 366(c) of the Bankruptcy Code.

**THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED**

26. Bankruptcy Rule 6003 empowers the Court to issue an order, within 21 days after the Petition Date, granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). For the reasons discussed above, entry of an interim order granting this Motion is integral to the Debtors' ability to successfully transition into chapter 11. As described above, any lapse or termination in Utility Services as a result of the Debtors' failure to establish adequate assurance could subject the Debtors to significant loss of the value of the Debtors' assets, thereby causing immediate and irreparable harm to the Debtors' estate and, consequently, other interested parties. Accordingly,

the Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULE 6004(h)

27. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to preserve value for the estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

28. To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## RESERVATION OF RIGHTS

29. Nothing contained herein or in the Proposed Orders is intended or shall be construed as: (i) an admission as to the validity, amount or priority of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim; (iii) a promise or requirement to pay any claim; (iv) a waiver of any claim or cause of action of the Debtors that exists against any entity; (v) a ratification or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code; (vi) a waiver of limitation of the Debtors' rights under the Bankruptcy Code, any other applicable law, or any agreement; or (vii) an admission or concession by the Debtors that any lien acknowledged or satisfied under this Motion is valid, and the Debtors expressly

reserve and preserve their rights to contest the extent, validity, or perfection, or seek avoidance of, any such lien.

## NOTICE

30. Notice of this Motion is being provided to: (a) the Office of the United States Trustee (Attn: Joseph Cudia, Esq. (joseph.cudia@usdoj.gov) and Fang Bu, Esq. (fang.bu@usdoj.gov)); (b) the Utility Providers; (c) counsel to the proposed debtor in possession financing lender; (d) the Internal Revenue Service; (e) the Debtors' banks and financial institutions; (f) the parties included on the Debtors' consolidated list of their 30 largest unsecured creditors; (g) the United States Attorney's Office for the District of Delaware; (h) the Securities and Exchange Commission; (i) the Delaware Secretary of State; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking first-day relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m).  The Debtors respectfully submit that no further notice of this Motion is required under the circumstances.

**CONCLUSION**

WHEREFORE, the Debtors request that the Court enter the Proposed Orders, granting the relief requested herein and such other and further relief as is just and proper.

| | |
|---|---|
| Dated: September 3, 2024<br>Wilmington, Delaware | Respectfully submitted,<br><br>**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>*/s/ Robert J. Dehney, Sr.*<br>Robert J. Dehney, Sr. (No. 3578)<br>Matthew B. Harvey (No. 5186)<br>Matthew O. Talmo (No. 6333)<br>Scott D. Jones (No. 6672)<br>Erin L. Williamson (No. 7286)<br>1201 N. Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, DE 19899-1347<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br>Email: rdehney@morrisnichols.com<br>         mharvey@morrisnichols.com<br>         mtalmo@morrisnichols.com<br>         sjones@morrisnichols.com<br>         ewilliamson@morrisnichols.com<br><br>*Proposed Counsel to the Debtors and*<br>*Debtors in Possession* |