**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LUMIO HOLDINGS, INC., *et al.*,[1] | Case No. 24-11916 (___) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL
ORDERS (A) AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION
TAXES AND FEES AND (B) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), respectfully state the following in support of this motion (the "Motion"):

**RELIEF REQUESTED**

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"): (a) authorizing, but not directing, the Debtors, in their sole discretion, to remit and pay certain accrued and outstanding prepetition taxes, including sales and use taxes, franchise taxes, property taxes, income taxes, and similar taxes and fees, in an amount up to $215,000 on an interim basis and up to $255,000 on a final basis (the "Taxes and Fees Cap"); and (b) granting related relief. In addition, the Debtors request that the Court schedule a final hearing to consider approval of this motion on a final basis.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, are Lumio Holdings, Inc. (7119) and Lumio HX, Inc. (7401). The Debtors' headquarters is located at 1550 W Digital Drive, Suite 200, Lehi, UT 84043.

1

**JURISDICTION AND VENUE**

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these chapter 11 cases (the "Chapter 11 Cases") pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order with respect to this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105(a), 363(c), 507(a)(8), and 541 of Title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 9013-1(m).

**BACKGROUND**

5. On September 3, 2024 (the "Petition Date"), the Debtors each filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the Petition Date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed in these Chapter 11 Cases.

6. The Debtors are the largest privately held residential solar provider that is fully vertically integrated with a full suite of photovoltaic solar system sales, installation and

operations. The Debtors' fully integrated model allows them to control every interaction with their customers to ensure superior service.

7. Additional factual background regarding the Debtor, including their business operations, capital structure, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Jeffrey T. Varsalone in Support of Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), which is fully incorporated by reference herein.

## THE DEBTORS' TAX OBLIGATIONS

8. In the ordinary course of business, the Debtors collect, incur, and pay sales taxes, use taxes, franchise tax, property tax, income tax, annual report and licensing fees, and various other governmental taxes, fees, and assessments (collectively, the "Taxes and Fees").[2] The Debtors remit the Taxes and Fees to various federal, state, and local governments, including taxing authorities (collectively, the "Taxing Authorities"). A schedule identifying the Taxing Authorities is attached hereto as **Exhibit C**.[3] The Debtors estimate that approximately $255,000 in Taxes and Fees relating to the prepetition period are or will become due and owing to the Taxing Authorities after the Petition Date in the ordinary course.[4] The Debtors further estimate that approximately $215,000 in Taxes and Fees relating to the prepetition period are or will become due and owing to the Taxing Authorities within 21 days after the Petition Date.

---

[2] The Debtors do not seek the authority to collect and remit state and federal employee-related withholding taxes by this motion. Such relief is instead requested in the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing, But Not Directing, the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief*, filed concurrently herewith.

[3] Although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted one or more Taxing Authorities. By this motion, the Debtors request relief applicable to all Taxing Authorities, regardless of whether such Taxing Authority is specifically identified on **Exhibit C**.

[4] This estimate does not include any potential prepetition tax liability that may later come due as the result of an audit.

9. The following table contains descriptions of the Taxes and Fees, as well as the Debtors' estimate of the amounts of the Taxes and Fees accrued as of the Petition Date:

| Category | Description | Approximate Amount Accrued as of Petition Date |
|---|---|---|
| Sales and Use Taxes | The Debtors collect and remit sales, use, and related taxes to the Government Authorities in various states in connection with the sale of their products or services. Generally, the Debtors collect and remit sales and use taxes to the relevant Taxing Authorities on a monthly basis. | $50,000 |
| Franchise Tax[5] | The Debtors are required to pay various state franchise taxes in order to continue conducting their businesses pursuant to state laws. The Debtors generally pay the franchise taxes on a quarterly basis. | $52,000 |
| Property Tax | State and local laws in the jurisdictions in which the Debtors operate general grant the Authorities the power to levy property taxes against the Debtors' personal property. To avoid the imposition of statutory liens on their personal property, the Debtors typically pay property taxes in the ordinary course of business on a monthly basis. | $9,000 |
| Income Tax | The Debtors incur federal, and state income taxes based on the jurisdictions in which they operate. The Debtors pay income taxes on an annually basis. | $0 |
| Licensing and Permitting Fees | The Debtors incur and remit monthly licensing and permitting fees in certain states in connection with chartering or operating in such states and incur certain fees relating to permits for operation. | $130,000 |
| Other Taxes and Fees | The Debtors remit other taxes and fees required to operate their businesses in certain states, including business and occupation taxes and gross receipts taxes. | $5,000 |
| **Total** | | **$246,000** |

---

[5] The Debtors were assessed Franchise Tax for the State of Texas for 2022. The Debtors dispute the assessment and have appealed. The State of Texas has also assessed a Franchise Tax for 2023 which the Debtors dispute. Accordingly, the Debtors do not seek the authority to pay that amount.

4

**BASIS FOR RELIEF**

I. **Payment of the Taxes and Fees as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment.**

10. The Debtors submit that timely payment of the Taxes and Fees is appropriate because it is necessary for the success of these Chapter 11 Cases and the Debtors' ongoing sale process. Section 363(c) of the Bankruptcy Code authorizes a debtor "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c) is to provide a debtor in possession with the flexibility to engage in ordinary transactions required to operate its business, without unneeded oversight by its creditors or the court. *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citation omitted); *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) (same).

11. Moreover, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175; *see also Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts are authorized to approve orders allowing payment of prepetition claims that are necessary for the debtors to have a successful reorganization); *In re Just For Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the debtor's business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994)

5

(same). "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing the doctrine of necessity and authorizing the debtor to pay prepetition claims if such payment was essential to the continued operation of the debtor).

12.     With these statutory underpinnings, the "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See Lehigh*, 657 F.2d at 581 (holding that the court may authorize payment of prepetition claims if such payment was essential to continued operation of the debtor); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing existence of judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation). The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11 "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176; *see also In re Friedman's Inc.*, No. 09-10161 CSS, 2011 WL 5975283, at *3 (Bankr. D. Del. Nov. 30, 2011) ("[N]ormally, a debtor only pays pre-petition, unsecured claims through a confirmed plan of reorganization . . . most courts will allow such payments under the 'doctrine of necessity,' if the debtor establishes that in its business judgment making such payments is critical to the survival of the debtor's business."). Accordingly, pursuant to section 105(a) of the Bankruptcy Code, the Debtors submit that the Court is empowered to grant the relief requested in this Motion.

13. This standard is satisfied here. The Debtors' ability to pay the Taxes and Fees is critical to maintaining the value of the Debtors' estates. If certain Taxes and Fees remain unpaid, Taxing Authorities may seek to impose penalties on the Debtors' directors, officers, or employees, thereby distracting them from the administration of these Chapter 11 Cases. Any collection action on account of such penalties, and any ensuing liability, would distract the Debtors and their personnel to the detriment of all parties in interest. The dedicated and active participation of the Debtors' officers and employees is essential to the orderly administration of these chapter 11 cases and maximizing the value of the Debtors' estates for the benefit of their stakeholders.

14. Therefore, for the reasons outlined here and in the First Day Declaration, the Debtors submit that payment of the Taxes and Fees is appropriate in the Debtors' business judgment and should be authorized pursuant to sections 105(a) and 363(c) of the Bankruptcy Code and the doctrine of necessity.

**II.  Certain of the Taxes and Fees Are Not Property of the Debtors' Estates.**

15. Certain of the Taxes and Fees may constitute so-called "trust-fund" obligations that are required to be collected from third parties and held in trust for payment to taxing and regulatory authorities. *See, e.g., Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 997 F.2d 1039, 1051 (3d Cir. 1993) (determining that refunds required to be collected by federal law-created trust fund was not property of debtors' estates).

16. Consequently, the funds that would be used to pay the trust-fund Taxes are not property of the Debtors' estates. *See* 11 U.S.C. § 541(d); *Begier v. I.R.S.*, 496 U.S. 53, 55–67 (1990) (finding that taxes such as excise taxes, FICA taxes, and withholding taxes are property held by debtor in trust for another and, as such, do not constitute property of estate); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 96 (3d Cir. 1994) (determining that withheld taxes were subject

to a trust); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (stating that funds held in trust for federal excise and withholding taxes are not property of debtor's estate and, therefore, not available for distribution to creditors). Because these funds are not property of the Debtors' estates and are not available for distribution to creditors, timely payment of the trust-fund Taxes would not prejudice the Debtor' estates and its creditors.[6]

### III. Payment of certain of the Taxes is appropriate under section 507(a)(8) of the Bankruptcy Code.

17. Furthermore, the Debtors' liability to pay the Taxes and Fees may ultimately result in increased tax liability for the Debtors if interest and penalties accrue on the tax claims. Many of the Taxes and Fees may be entitled to priority status pursuant to section 507(a)(8)(C) of the Bankruptcy Code. As priority claims, these obligations must be paid in full before any general unsecured obligations of the Debtors may be satisfied. To the extent that the Debtors are unable to timely pay the prepetition Taxes and Fees, they may ultimately be required to pay those amounts with additional interest and penalties. The Debtors' failure to pay the prepetition Taxes and Fees as they come due thus may ultimately increase the amount of priority claims held by the Taxing Authorities against the Debtors' estates to the detriment of the Debtors' general unsecured creditors. *See* 11 U.S.C. § 507(a)(8)(C), (G). Accordingly, the Court should grant the Debtors authority to pay, in their sole discretion, the prepetition Taxes and Fees as provided herein.

### THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

18. Certain aspects of the relief requested herein are subject to Bankruptcy Rule 6003, which governs the availability of certain types of relief within twenty-one (21) days after

---

[6] For the avoidance of doubt, the Debtors hereby request authority to pay the Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust-fund obligations.

the Petition Date. Pursuant to Bankruptcy Rule 6003, a court may grant this relief on an expedited basis if it is necessary to avoid immediate and irreparable harm. The Debtors submit that the facts set forth herein and in the First Day Declaration demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and, thus, Bankruptcy Rule 6003 has been satisfied.

## RESERVATION OF RIGHTS

19.    Nothing contained herein is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the interim order or final order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

20.    For the successful implementation of the foregoing, the Debtors seek a waiver of the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As set forth above, and in the First Day Declaration, the relief requested

in this Motion is necessary to avoid immediate and irreparable harm to the Debtors. Specifically, the payment of the Taxes is essential to prevent potentially irreparable damage to the Debtors' Chapter 11 Cases and ability to preserve, generate, and recover value for the benefit of their estates. Accordingly, the Debtors submit that ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NOTICE

21.     The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware (Attn: Joseph Cudia, Esq. (joseph.cudia@usdoj.gov) and Fang Bu, Esq. (fang.bu@usdoj.gov)); (b) counsel to the Debtors' proposed debtor in possession financing lender; (c) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (d) all parties asserting liens against the Debtors' assets; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for all states in which the Debtors conduct business or have conducted business; (i) the Taxing Authorities; and (j) any party that requests service pursuant to Bankruptcy Rule 2002. As the Motion is seeking "first day" relief, within two (2) business days after the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**CONCLUSION**

**WHEREFORE**, the Debtors respectfully requests that the Court (i) enter an interim order, substantially in the form attached hereto as **Exhibit A** granting the relief requested in this Motion, (ii) schedule a final hearing on this Motion and thereafter enter a final order substantially in the form attached hereto as **Exhibit B**, and (iii) grant such other and further relief as the Court may deem proper.

Dated: September 3, 2024
      Wilmington, Delaware

Respectfully submitted,

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Robert J. Dehney, Sr.*
Robert J. Dehney, Sr. (No. 3578)
Matthew B. Harvey (No. 5186)
Matthew O. Talmo (No. 6333)
Scott D. Jones (No. 6672)
Erin L. Williamson (No. 7286)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile:  (302) 658-3989
Email:  rdehney@morrisnichols.com
        mharvey@morrisnichols.com
        mtalmo@morrisnichols.com
        sjones@morrisnichols.com
        ewilliamson@morrisnichols.com

*Proposed Counsel to the Debtors and Debtors in Possession*