# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LUMIO HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24- 11916 (___)<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO MAINTAIN THEIR CUSTOMER
PROGRAMS AND HONOR CUSTOMER OBLIGATIONS, AND
(II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors") respectfully move (this "Motion") as follows:

**RELIEF REQUESTED**

1. The Debtors request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order"): (i) authorizing the Debtors, in their sole discretion, to (a) maintain and administer certain prepetition customer programs (the "Customer Programs") and honor all customer obligations (the "Customer Obligations") in the ordinary course of business and in a manner consistent with past practice and (b) renew, replace, implement, modify or terminate Customer Programs as the Debtors deem appropriate in their business judgment, in the ordinary course of business and consistent with past practice, without further order of the Court; and (ii) granting certain related relief, including scheduling the Final Hearing.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, are Lumio Holdings, Inc. (7119) and Lumio HX, Inc. (7401). The Debtors' headquarters is located at 1550 W Digital Drive, Suite 200, Lehi, UT 84043.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. The statutory bases for the relief requested herein are sections 105(a), 363(b), 1107(a) and 1108 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 9013-1(m).

**BACKGROUND**

5. On September 3, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee has been appointed in these cases.

6. The Debtors are the largest privately held residential solar provider that is fully vertically integrated with a full suite of photovoltaic solar system sales, installation and

operations. The Debtors' fully integrated model allows them to control every interaction with their customers to ensure superior service.

7. Additional details regarding the Debtors, their businesses, the events leading to the commencement of these cases, and the facts and circumstances supporting the relief requested herein is set forth in the *Declaration of Jeffrey T. Varsalone in Support of Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), filed concurrently herewith and incorporated herein by reference.

## DEBTORS' CUSTOMER PROGRAMS

8. The Debtors are a leading seller and installer of residential solar energy systems that are designed to produce electricity from the radiant light and heat generated from the Sun. The Debtors excel in providing local and authentic expertise coupled with the added advantage of having the resources of a national company.

9. In the ordinary course of their business, the Debtors engage in a number of practices to develop, support, and sustain a positive reputation with the Debtors' customers (each, a "Customer" and collectively, the "Customers") and in the marketplace generally. The viability and success of the Debtors' business depends on these Customer relationships which the Debtors have worked tirelessly to maintain. Because the Customer Programs are an essential component of the Debtors' ongoing operations and Customer-retention strategy, continuing to honor the Customer Programs described below—including certain prepetition obligations arising thereunder—is necessary to maximize the value of the Debtors' estates and benefit all creditors and stakeholders in these chapter 11 cases (these "Chapter 11 Cases"). Moreover, the Customer Programs generally represent practices that are common in the industry and, therefore, if the Debtors do not continue the Customer Programs, they will be at a disadvantage in a competitive marketplace. On average, the Debtors estimate that they pay approximately $1,800,000 annually

on account of Customer Programs. By this Motion, the Debtors are seeking authority to pay up to $335,000 on account of prepetition obligations owed pursuant to the Customer Programs, all of which the Debtors expect will come due during the interim period.

10. The Debtors believe it is essential to continue the Customer Programs because they allow the Debtors to preserve goodwill with existing Customers and attract new customers. The success of the Debtors' business hinges on the Debtors' relationship with their Customers. Ultimately, the Debtors believe that it is in the best interest of their estates to continue to honor the Customer Programs to maintain the productive relationships the Debtors have cultivated with their Customers, without the benefit of which, the Debtors' business, and ultimately the outcome of these Chapter 11 Cases, would be irreparably harmed. The following are general descriptions and examples of the Debtors' Customer Programs[2]:

### I.     The Warranty Program

11. Consistent with industry standards, the Debtors provide their Customers with limited warranties in connection with the work associated with the installation of residential solar energy systems (the "Warranty Program"). Initially, the Warranty Program varied depending if the installation was on a standard or non-standard roof.[3] On a non-standard roof, the Debtors provided a ten (10) year warranty covering material defects caused by the Debtors in workmanship (the "Workmanship Warranty") and roof leaks for a period of twelve (12) months. The Warranty Program for standard roofs consisted of the Workmanship Warranty and watertight installation for any penetration of the roof for a period of ten (10) years. For approximately the last year and a

---

[2] The Debtors also provide customers with the ability to prepay for the future expense of having the solar panels reinstalled after having a new roof installed (the "Customer Prepaids Program"). Currently, there are only 28 participants in the Customer Prepaids Program. The Debtors also seek authority to continue the Customer Prepaids Program.

[3] A non-standard roof was defined as "tar-and-gravel, built-up, or stone coated steel roofs."

half, the Warranty Program consists only of a warranty period of twelve (12) months. The Debtors incur approximately $160,000 in liabilities in connection with claims under Warranty Program each month.

12. Upon submission of a claim under the Warranty Program, the Debtors may repair or replace the defective product or damage caused by installation of the solar panels. The Debtors' business relies upon their reputation and goodwill within the solar industry to attract new customers. If the Debtors fail to honor their obligations under the Warranty Program during these Chapter 11 Cases, Customers may not recommend the Debtors' services and products to others, damaging the Debtors' reputation and negatively affecting sales. By this Motion, the Debtors seek authority to maintain the Warranty Program in a manner consistent with their past practices and honor all related Customer Obligations in the ordinary course of business.

### II.    Refunds to FinCos

13. Customers of the Debtors who wish to purchase their solar panels may finance the residential installation of the panels through certain companies that provide financing services on behalf of the Debtors (the "FinCos"). When a Customer enters into a financing agreement (each an "Agreement") with one of the FinCos, that FinCo advances the Debtors an upfront payment (the "Prepayment") toward the installation. However, on average, thirty percent of the Agreements fail to proceed through to installation. When this occurs, the FinCos are entitled to "claw back" the Prepayments from the Debtors. On average, the FinCos claw back approximately $500,000 each month in Prepayments.

14. The FinCos are an integral part of the Debtors' business operations. Without the ability to offer financing to their customers through the FinCos, the Debtors' sales volume would decrease dramatically. Such a result would jeopardize the Debtors' ability to

continue operations and maximize value for their estates and stakeholders. Accordingly, the Debtors seek authorization to continue the financing arrangements with the FinCos, including the payment of the Prepayments, in a manner consistent with their past practices in the ordinary course of business.

### III. Customer Rebate Program

15. The Debtors provide certain customers with rebates (the "Rebate Program"), with the applicable rebate varying from customer to customer and order to order. The Debtors provide these rebates to show customer appreciation or as remediation for various issues associated with installation. The Debtors seek authorization to maintain the Rebate Program in a manner consistent with their past practices and to honor all related customer obligations with respect to the Rebate Program in the ordinary course of business. Without the ability to continue offering the Rebate Program, certain customers may be unwilling to transact with the Debtors, which could lead to a decline in revenues, the ultimate cost of which would be borne by the Debtors' estates. As of the Petition Date, the Debtors approximate that $50,000 is owed on account of the Rebate Program.

### IV. Promotions.

16. The Debtors also allow employees within their sales department to offer various customer promotions (the "Promotions"). The Promotions may consist of discounts or promotions on eligible products and services. The Debtors believe that the Promotions encourage sales and enable the Debtors to better market their products and services. Without the ability to offer the Promotions, the Debtors could lose Customers to lower-priced competitors, resulting in much greater financial losses than the risk of offering discounts. As of the Petition Date, the Debtors do not believe there are any amounts due and owing on account of the Promotions. The

Debtors seek the authority to maintain or implement the Promotions in the ordinary course of business and to honor their obligations related thereto on a postpetition basis.

17. Accordingly, the Debtors request authorization to pay any prepetition amounts owed on account of the Customer Programs in the ordinary course of business to avoid damaging customer relationships and to continue the Customer Programs on a postpetition basis in the ordinary course of business and consistent with their prepetition practices.

## BASIS FOR RELIEF REQUESTED

### I. The Customer Programs are Ordinary Course Transactions Authorized by Section 363(c) of the Bankruptcy Code.

18. As an initial matter, the Debtors believe that continuing to honor their obligations related to the Customer Programs is within the Debtors' ordinary course of business. Sections 1107(a) and 1108 of the Bankruptcy Code allow a debtor in possession to continue to operate its business. Further, section 363(c)(1) of the Bankruptcy Code, authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." The purpose of section 363(c)(1) is to provide debtors with the flexibility to engage in ordinary transactions required to operate their business without unnecessary oversight by the court or their creditors. *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citations omitted); *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *Chaney v. Off. Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (Bankr. S.D.N.Y. 1997).

19. The Customer Programs are the type of ordinary course transactions contemplated by section 363(c)(1). The Customer Programs represent a key component of the

Debtors' business and allow the Debtors to attract and maintain Customers. Indeed, the Customer Programs are standard practice in the solar energy installation industry, and the Customers expect to participate in these types of programs. Absent being able to continue the Customer Programs in the ordinary course of business as they had done prior to the Petition Date, the Debtors' goodwill with their customers that is necessary to maintain the going-concern value of the business would be materially harmed. Therefore, continuing, renewing, replacing, initiating, and/or terminating Customer Programs falls well within the scope of activities that sections 363(c), 1107(a), and 1108 of the Bankruptcy Code and does not require notice and a hearing. Nonetheless, the Debtors seek authorization to continue to maintain the Customer Programs out of an abundance of caution.

**II. Continuing to Honor the Customer Programs Is Warranted Under Sections 105(a), 363(b) and 507(a)(7) of the Bankruptcy Code.**

20. The Court may also authorize the continuation of the Customer Programs, other than in the ordinary course of business, under section 363(b) of the Bankruptcy Code, which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). This section authorizes a court to allow a debtor to satisfy certain prepetition claims. To do so, the Debtors "must articulate some business justification, other than the mere appeasement of major creditors." *In re Ionosphere Clubs*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

21. Section 105(a) of the Bankruptcy Code provides an additional basis to grant the requested relief. It authorizes a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").

22. The well-established "necessity of payment" has been recognized by the Third Circuit Court of Appeals in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). That doctrine provides for payment of prepetition claims as necessary to maintain the continuity of a debtor's business. *See id.* (payment of creditors' claims authorized under "necessity of payment" doctrine); *In re Penn Central Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or materials essential to the conduct of the business until their pre- reorganization claims have been paid"); *In re Just For Feet Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (recognizing "the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that the debtors "may pay pre-petition claims that are essential to continued operation of business"); *Ionosphere Clubs*, 98 B.R. at 176 (necessity of payment rule applies to chapter 11 debtors) (citing *Dudley v. Mealey*, 147 F.2d 268 (2d Cir.), *cert. denied*, 315 U.S. 873 (1945)).

23. Although the "doctrine of necessity" predates the Bankruptcy Code, *see Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 309 (1882), the modern application of the doctrine of necessity is grounded in specific provisions of the Bankruptcy Code, including sections 105(a), 1107(a) and 1108. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (fiduciary duties implicit in section 1107(a) of the Bankruptcy Code justify the "preplan satisfaction of a prepetition claim" where necessary to preserve going-concern value). The doctrine, largely unchanged from the Court's reasoning in *Miltenberger*, is a widely accepted component of bankruptcy jurisprudence. *See In re Just for Feet, Inc.*, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy the

debtor's business by refusing to deliver new inventory on the eve of debtor's key sales season); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (Bankr. S.D.N.Y. 1987) (affirming order authorizing payment of prepetition wages, salaries, expenses and benefits); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agreed to provide postpetition trade credit).

24. Continuing to administer the Customer Programs without interruption during the pendency of these Chapter 11 Cases will help preserve the Debtors' valuable customer relationships and goodwill, which will inure to the benefit of all creditors and stakeholders in the form of ongoing customer purchases. In addition, the Customer Programs constitute an important part of the Debtors' business and strategy. As mentioned, the Customer Programs are standard practice in the solar energy installation industry. Given the competitive nature of the Debtors' industry, the Debtors' success and the realization of maximized value depends on the quality and strength of their Customer relationships, their ability to attract new customers during these Chapter 11 Cases, and the maintenance and sustainment of their current business relationships. Any failure to honor their Customer Programs may disrupt the Debtors' ability to make similar sales postpetition, and, as a result, could curb the Debtors' profitability and negatively impact the Debtors' chapter 11 plans.

25. Further, the Debtors' ability to attract new Customers and maintain their existing Customer relationships during these Chapter 11 Cases is critical to maximizing the estate's value. The commencement of these Chapter 11 Cases, and the circumstances surrounding them, will undoubtedly create apprehension on the part of Customers or potential Customers regarding their willingness to purchase solar products from the Debtors. As previously discussed, the

damage that would result if the Debtors failed to honor their prepetition Customer Programs significantly outweighs any arguable harm to the Debtors' estates if such obligations are honored.

26. Courts in this District routinely authorize the continuation of customer programs. *See, e.g., In re Number Holdings, Inc. et al.,* Case No. 24-10719 (JKS) [D.I. 120] (Bankr. D. Del. April 10, 2024); *In re PARTS iD Inc., et al.,* Case No. 23-12098 (LSS) [D.I. 87] (Bankr. D. Del. Jan 12, 2024); *In re Unconditional Love Inc., et al.,* Case No. 23-11759 (MFW) [D.I. 133] (Bankr. D. Del. Nov. 18, 2023); *In re AeroFarms, Inc., et al.*, Case No. 23-10737 (MFW) [D.I. 96] (Bankr. D. Del. June 29, 2023); *In re Fast Radius Inc., et al.*, Case No. 22-11051 (JKS) [D.I. 138] (Bankr. D. Del. Dec. 6, 2022); *In re APC Auto. Techs. Intermediate Holdings, LLC, et al.*, Case No. 20-11466 (CSS) [D.I. 125] (Bankr. D. Del. June 23, 2020); *In re Achaogen, Inc.*, Case No. 19-10844 (BLS) [D.I. 49] (Bankr. D. Del. April 16, 2019).

27. Moreover, the nonpayment of the Customer Programs on a postpetition basis will adversely impact the Debtors' goodwill and going-concern value. *See In re CoServ*, 273 B.R. at 497. Further, the Debtors have determined, in the sound exercise of their business judgment, that maintaining the Customer Programs, including payment of any amounts due thereunder in the ordinary course of business is critical to the success of these Chapter 11 Cases. Continuing the Customer Programs and payment of amounts due thereunder, the importance of which cannot be overstated, without interruption will help preserve the Debtors' valuable Customer relationships and goodwill, which will inure to the benefit of all of the Debtors' creditors and stakeholders.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

28. In order for a debtor to obtain relief to make payments within 21 days of the Petition Date, it must establish that making such payments satisfies the requirements mandated by Bankruptcy Rule 6003—namely, the relief requested is necessary to avoid "immediate and

irreparable harm." If a debtor's prospect of reorganizing is threatened, or swift diminution in value of the debtor's estate is likely absent the granting of the requested relief, immediate and irreparable harm likely exists. *See In re WorldSpace, Inc.*, 2008 WL 8153639, at *2 (Bankr. D. Del. Oct. 20, 2008) (finding that relief requested by the debtors was necessary to avoid irreparable harm to the debtors and their estates because such relief was essential for the continued operation of the debtors' businesses).

29. Immediate and irreparable harm would result if the relief requested herein is not granted. A failure to honor the Customer Obligations would significantly damage customer satisfaction and goodwill, and diminish the Debtors' ability to effectively conduct their businesses. These effects would have an adverse impact on the Debtors' businesses, thereby causing immediate and irreparable harm. Failure to receive the requested relief during the first 21 days of these Chapter 11Ccases would severely disrupt the Debtors' operations at this important juncture. For the reasons discussed herein, the relief requested is necessary for the Debtors to operate their businesses in the ordinary course and preserve the value of the Debtors' assets and maximize the value of the estates for the benefit of all stakeholders. Accordingly, the Debtors respectfully submit that it has satisfied Bankruptcy Rule 6003 as it relates to the relief requested herein.

**WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)**

30. Given the nature of the relief requested herein, the Debtors respectfully request a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14- day stay under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons described above, the relief requested is essential to prevent potentially irreparable damage to the Debtors' operations, value and ability to reorganize.

**RESERVATION OF RIGHTS**

31. Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity, amount or priority of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim; (iii) a promise or requirement to pay any claim; (iv) a waiver of any claim or cause of action of the Debtors that exists against any entity; (v) a ratification or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code; (vi) a waiver of limitation of the Debtors' rights under the Bankruptcy Code, any other applicable law, or any agreement; or (vii) an admission or concession by the Debtors that any lien acknowledged or satisfied under this Motion is valid, and the Debtors expressly reserve and preserve their rights to contest the extent, validity, or perfection, or seek avoidance of, any such lien.

**NOTICE**

32. Notice of this Motion will be provided to: (a) the Office of the United States Trustee (Attn: Joseph Cudia, Esq. (joseph.cudia@usdoj.gov) and Fang Bu, Esq. (fang.bu@usdoj.gov)); (b) counsel to the Debtors' proposed debtor in possession financing lender; (c) the Internal Revenue Service; (d) the parties included on the Debtors' consolidated list of their 30 largest unsecured creditors; (e) the United States Attorney for the District of Delaware; (f) the state attorneys general in states where the Debtors are authorized to do business; (g) the Securities and Exchange Commission; and (h) all parties entitled to notice pursuant to Bankruptcy Rule 2002-1. As this Motion is seeking first-day relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m). The Debtors respectfully submit that no further notice of this Motion is required under the circumstances.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Interim Order, substantially in the form attached hereto as **Exhibit A**, (b) enter the Final Order, substantially in the form attached hereto as **Exhibit B**, and (c) grant such other and further relief as the Court may deem just and appropriate.

Dated:  September 3, 2024
Wilmington, Delaware

Respectfully submitted,

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Robert J. Dehney, Sr.*
Robert J. Dehney, Sr. (No. 3578)
Matthew B. Harvey (No. 5186)
Matthew O. Talmo (No. 6333)
Scott D. Jones (No. 6672)
Erin L. Williamson (No. 7286)
1201 Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email:  rdehney@morrisnichols.com
          mharvey@morrisnichols.com
          mtalmo@morrisnichols.com
          sjones@morrisnichols.com
          ewilliamson@morrisnichols.com

*Proposed Counsel to the Debtors and Debtors in Possession*