## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUMIO HOLDINGS, INC., *et al.,*[1] | Case No. 24-11916 (___) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) CONTINUE TO OPERATE THEIR EXISTING CASH MANAGEMENT SYSTEM, (B) PAY OR HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN THEIR BANK ACCOUNTS AND EXISTING BUSINESS FORMS, AND (D) IMPLEMENT CHANGES TO THE EXISTING CASH MANAGEMENT SYSTEM AS NECESSARY AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (the "Motion"):

### RELIEF REQUESTED

1.       The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order"), granting, among other things, the following relief:

(a)      authorizing the Debtors, in their sole discretion, to (i) continue to operate their Cash Management System, (ii) continue to use, with the same account numbers, all Bank Accounts and (iii) implement any changes to the Cash Management System as they may deem necessary and appropriate, in the ordinary course of business;

(b)      authorizing the Banks to (i) continue to maintain, service and administer the Bank Accounts as accounts for the Debtors as debtors in possession and provide related treasury, accounting and cash management services without interruption and in the ordinary course, (ii) receive, process, honor and pay, to the extent of available funds, any and all checks, drafts, wires, ACH

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, are Lumio Holdings, Inc. (7119) and Lumio HX, Inc. (7401). The Debtors' headquarters is located at 1550 W Digital Drive, Suite 200, Lehi, UT 84043.

transfers, credit card payments, other electronic transfers or other items presented, issued or drawn on the Bank Accounts and (iii) debit or charge back the Bank Accounts for all undisputed prepetition and postpetition Bank Fees and undisputed prepetition and postpetition Processing Fees;

(c)     authorizing the Debtors to (i) continue to use their existing Business Forms in their present form, without reference to the Debtors' status as debtors in possession, until all existing Business Forms in existence before the Petition Date have been exhausted and (ii) ensure electronic Business Forms are clearly labeled "Debtors in Possession" within 15 days of entry of the Interim Order; and

(d)     scheduling the Final Hearing.

### <u>JURISDICTION AND VENUE</u>

2.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.     The statutory bases for the relief requested herein are sections 105, 345, and 363 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rules 2015-2 and 9013-1(m).

## BACKGROUND

5.      On September 3, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors continue to manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee has been appointed in these cases.

6.      The Debtors are the largest privately held residential solar provider that is fully vertically integrated with a full suite of photovoltaic solar system sales, installation and operations.  The Debtors' fully integrated model allows them to control every interaction with their customers to ensure superior service.

7.      Additional details regarding the Debtors, their businesses, the events leading to the commencement of these cases, and the facts and circumstances supporting the relief requested herein is set forth in the *Declaration of Jeffrey T. Varsalone in Support of Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), filed concurrently herewith and incorporated herein by reference.

## FACTS SPECIFIC TO THE RELIEF REQUESTED

**I.          The Cash Management System.**

8.      The Debtors maintain an integrated centralized cash management system to collect, transfer, manage and disburse funds generated and used their businesses in the ordinary course (the "Cash Management System").  The Cash Management System is centrally managed by the Debtors out of the Debtors' principal office in Lehi, Utah and all funds are in U.S. dollars. The Debtors maintain daily oversight of the Cash Management System and implement cash management controls for entering, processing and releasing funds.  Additionally, the Debtors regularly reconcile books and records to ensure that all transfers are accounted for properly.

9.     The Debtors' Cash Management System has historically been operated through accounts with JP Morgan Chase ("JP Morgan").  This system was comprised of sixteen total bank accounts, of which thirteen were used in operations (the "JP Morgan Operating Accounts") and three were used to hold funds that support letters of credit for the Debtors' insurance policies (the "JP Morgan LOC Accounts," and with the JP Morgan Operating Accounts, the "JP Morgan Accounts").  Prior to the Petition Date, the Debtors transferred the funds held in the JP Morgan Operating Accounts to new bank accounts at Bank of America, N.A. ("BoA," and with JP Morgan, the "Banks").  The Debtors intend to continue to maintain the JP Morgan LOC Accounts.  The JP Morgan Operating Accounts are now inactive.

10.     The current Cash Management System is comprised of three bank accounts[2] (such accounts, together with any other bank accounts the Debtors may open in the ordinary course of business, the "BoA Bank Accounts," and with the JP Morgan Accounts, the "Bank Accounts") all held in the name of Debtor Lumio HX, Inc.  The BoA Bank Accounts consist of: (a) an operating account (the "Operating Account") into which cash is deposited in the ordinary course and from which wire and ACH payments are disbursed in the ordinary course; (b) a payroll account (the "Payroll Sweep Account"), which is funded from the Operating Account and is used to cover the costs associated with payroll and to process check disbursements to employees for payroll purposes; and (c) a collections account (the "Collections Sweep Account"), into which cash collected from accounts receivables is deposited.[3]

---

[2]    Prior to the Petition Date, the Debtors began the process of opening another account at BoA.  The Debtors intend to use this account as the utility deposit account which will be maintained by the Debtors.

[3]    The Debtors also maintain an account at Bill.com, an online subscription ACH bill pay service that sends checks on behalf of the Debtors to applicable payees, which is used solely by the Debtors to pay the charges on company credit cards.  The Debtors do not maintain or hold any funds at the Bill.com account.

11.     The Debtors generate cash primarily through sales to customers and installation of their products.  Generally, Debtors receive funds on account of sales in the Collections Sweep Account.  Any funds remaining in the Collections Sweep Account at the close of each business day are swept into the Operating Account.  Thus, at the start of each business day, the Collections Account has a beginning balance of $0.00.  Similar to the Collections Sweep Account, any funds remaining in the Payroll Sweep Account are swept into the Operating Account at the close of each business day.

12.     The Bank Accounts are maintained at the Banks which are insured by the Federal Deposit Insurance Corporation ("FDIC").  A schedule of the BoA Bank Accounts, including the last four digits of each account, is attached hereto as **Exhibit C**.  A list of the JP Morgan Accounts is attached hereto as **Exhibit D**.  Disbursements from the Bank Accounts that are made by wire transfer are manually initiated by the Debtors, while ACH payments may be initiated either by the Debtors or by a select group of third-party payment processors.  As of the Petition Date, the Bank Accounts contained a total of approximately $5,896,397.05.

13.     The Debtors' Cash Management System facilitates the timely and efficient collection, management, and disbursement of funds.  The Debtors intend to utilize their existing Cash Management System throughout these chapter 11 cases (these "Chapter 11 Cases") in the ordinary course of business and in accordance with historical practices.  Maintaining certain processes of the prepetition Cash Management System are critical to the Debtors' ability to continue operations and preserve the value of their businesses.

14.     Accordingly, the Debtors seek authorization to continue their Cash Management System to avoid the disruption that would result if the Debtors were forced to close the Bank Accounts.

## II.        The Bank Fees.

15.        In the ordinary course of business, BoA and JP Morgan charge, and the Debtors pay, honor or allow to be deducted from the applicable Bank Account, certain service charges and other fees, costs and expenses charged by BoA and JP Morgan for maintaining the Bank Accounts in accordance with applicable agreements or schedules of fees governing the Bank Accounts (collectively, the "Bank Fees").

16.        The Bank Fees have historically totaled approximately $9,000 per month in the aggregate.[4]  The Debtors estimate that there are approximately $20,000 of accrued but unpaid Bank Fees outstanding as of the Petition Date (collectively, the "Prepetition Bank Fees"), all of which will become due and owing during the first 21 days of these Chapter 11 Cases.[5] Accordingly, the Debtors request authority, but not direction, to honor and pay the Prepetition Bank Fees in an amount not to exceed $20,000.

## III.        Business Forms.

17.        As part of their Cash Management System, checks, preprinted business forms including business letterhead, purchase orders, invoices, envelopes, promotional materials and other business forms and correspondence in the ordinary course of business (collectively, the "Business Forms").  The Debtors do not typically print their own checks, but rather use check stock provided by their banks.  To minimize expense and disruption, the Debtors seek authority to continue to use all Business Forms in substantially the form used immediately before the Petition

---

[4]     The Debtors previously used Chase Orbital as a credit card processor.  Customers who paid with a credit card for services would be routed through Chase Orbital who would hold the funds for 4-5 days before depositing into the Debtors' Bank Accounts.  When funds are deposited in the Bank Accounts, Chase Orbital automatically withdraws its processing fee which is calculated on a per transaction basis.  As the Debtors no longer use Chase Orbital, any processing fees are *de minimis*.

[5]     The Debtors opened the BoA Bank Accounts approximately two months ago but have yet to be assessed any Bank Fees with respect to those accounts.

Date, without reference to the Debtors' status as debtors in possession.  The Debtors will communicate with various vendors and counterparties to notify them of the commencement of these cases, which the Debtors believe will provide adequate notice of the Debtors' status as debtors in possession.  In accordance with Local Rule 2015-2(a), once the Debtors exhaust their existing Business Forms, they will ensure that any new Business Forms are clearly labeled "Debtors in Possession" and, with respect to any Business Forms that exist or are generated electronically, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtors in Possession" within 15 days of entry of the Interim Order.

**V.      Compliance with the U.S. Trustee Guidelines and the Bankruptcy Code.**

18.      Section 345(b) of the Bankruptcy Code authorizes deposits or investments of money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit or the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety.  11 U.S.C. § 345(b).

19.      The Debtors are currently in compliance with section 345(b) of the Bankruptcy Code.  All of the Debtors' cash is held at Banks that are approved depository institutions in accordance with the operating guidelines established by the United States Trustee for the District of Delaware (the "U.S. Trustee") for debtors in possession (the "U.S. Trustee Guidelines").  Likewise, the Bank Accounts are insured by the FDIC.  Thus, the Debtors believe that the Banks are well-positioned to perform the necessary depository and cash management functions during these Chapter 11 Cases, and that any funds deposited into the Bank Accounts are

secure.  Accordingly, the Debtors are in compliance with the U.S. Trustee Guidelines and the Bankruptcy Code.

**BASIS FOR RELIEF**

I.      **The Court Should Authorize the Debtors' Continued Use of the Cash Management System.**

20.      Section 363(c)(1) of the Bankruptcy Code authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) is to provide a debtor-in-possession the flexibility to engage in the ordinary course transactions required to operate its business, without undue oversight by its creditors or the court.  *See, e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992); *see also Charter Co.* v. *Prudential Ins. Co. of Am.* (*In re Charter Co.*), 778 F.2d 617, 621 (11th Cir. 1985) (holding that a debtor's request for authority to continue using its existing cash management system is consistent with section 363(c)(1) of the Bankruptcy Code).

21.      The Debtors request authorization to continue using the Cash Management System on a postpetition basis and to honor any related prepetition obligations.  Here, the Cash Management System enables the Debtors to efficiently track and control funds, ensure cash availability and reduce administrative costs.  Requiring the Debtors to dismantle the Cash Management System and adopt a new cash management system would, among other things, impair the Debtors' day-to-day operations.  Adopting a new cash management system would also result in the Debtors incurring material expenses, create unnecessary burdens on their employees and disrupt relationships with their key customers and suppliers.

22.      In contrast, maintaining the Cash Management System will facilitate the Debtors' reorganization efforts by preserving a "business as usual" atmosphere and avoiding the

8

costly delays, distraction and unnecessary confusion.  Maintaining the Cash Management System would also facilitate the Debtors' transition into chapter 11 by, among other things, minimizing delays in making postpetition payments, eliminating administrative inefficiencies and allowing the Debtors' employees to focus on their day-to-day responsibilities.

23.    The Debtors submit that parties-in-interest will not be harmed by maintaining the Cash Management System.  The Debtors have implemented appropriate measures to ensure that payments will not be made on account of obligations incurred before the Petition Date other than those authorized by the Court.  The Debtors will also work closely with the Banks to ensure that appropriate procedures are in place to prevent checks issued prepetition from being honored without the Court's approval.

24.    In addition, the Debtors request that the Court authorize the Debtors to implement any changes to the Cash Management System they may deem necessary and appropriate in their sole discretion, in the ordinary course of business consistent with past practices, including opening any additional bank account or closing any Bank Account.  The Debtors shall give notice of any material change to the Cash Management System to the U.S. Trustee and counsel to any official statutory committee appointed in these Chapter 11 Cases within 15 days of such change.  Any new bank account opened by the Debtors will be maintained with a bank that is an approved depository institution in accordance with the U.S. Trustee Guidelines.

25.    To the extent the Banks honor a prepetition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtors or in a good faith belief that the Court has authorized such prepetition check or item to be honored, the Debtors request that such Bank not be deemed to be liable to the Debtors or their estates on account of such prepetition check or other item honored postpetition.  The Debtors believe that granting such

flexibility to the Banks is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether the Debtors may pay a particular item in accordance with a Court order or otherwise.  The relief requested is necessary to induce the Banks to continue providing cash management services.

26.    Courts in this district have routinely authorized debtors to continue their cash management systems.  *See*, *e.g.*, *In re Number Holdings, Inc., et al.,* Case No. 24-10719 (JKS) (May 7, 2024) (D.I. 411) (authorizing the debtors' continued use of existing cash  management system); *In re Timber Pharmaceuticals, Inc. et al.*, Case No. 23-11878 (JKS) (Dec. 13, 2023) (D.I. 105) (same); *In re Lincoln Power, L.L.C.*, Case No. 23-10382 (LSS) (Apr. 27, 2023) (D.I. 110) (same); *In re Clovis Oncology, Inc.*, Case No. 22-11292 (JKS) (Jan. 18, 2023) (D.I. 212) (same); *In re ExpressJet Airlines LLC*, Case No. 22-10787 (MFW) (September 15, 2022) (D.I. 106) (same); *In re WB Supply LLC*, Case No. 21-10729 (BLS) (May 19, 2021) (D.I. 127) (same). Accordingly, the Debtors submit that the continued used of the Cash Management System is necessary, appropriate and in the best interest of the Debtors' estates.

**II.    The Court Should Authorize the Debtors to Maintain Existing Bank Accounts and to Continue Using Debit, Wire and Electronic Transfers.**

27.    The U.S. Trustee Guidelines require a chapter 11 debtor, among other things, to:  (a) close all existing bank accounts and open one or more accounts designated as debtor-in-possession accounts; (b) establish one debtor-in-possession bank account for all estate monies required for the payment of taxes; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) obtain checks that bear the designation "Debtors in Possession" and reference the bankruptcy number and type of account on such checks.  These requirements are designed to provide a clear line of demarcation between prepetition and postpetition payments and prevent the inadvertent payment of prepetition claims.

28.     The Debtors request a waiver of the requirement of the U.S. Trustee Guidelines that the Bank Accounts be closed and that new postpetition bank accounts be opened. If enforced in these Chapter 11 Cases, such requirements would disrupt and delay the Debtors' operations and ability to efficiently administer these Chapter 11 Cases.  The Bank Accounts comprise an established Cash Management System that the Debtors must maintain in order to ensure the uninterrupted collection and disbursement of funds in the ordinary course of their business.  Therefore, to avoid delays in paying obligations incurred postpetition, and to ensure a smooth transition into chapter 11, the Debtors should be permitted to continue to maintain the Bank Accounts and, if necessary, to open new accounts and close existing accounts in the normal course of business operations.  Otherwise, the process of transitioning the Bank Accounts to new bank accounts will be disruptive, time consuming and expensive.

29.     In addition, to the extent the U.S. Trustee Guidelines require the Debtors to make all disbursements by check, the Debtors request further relief from the U.S. Trustee Guidelines.  The Debtors conduct many transactions on a daily basis by debit, wire, ACH transfer and other similar methods.  If the Debtors' ability to conduct transactions through such methods is impaired, the Debtors' operations and ability to preserve a "business as usual" atmosphere may be unnecessarily disrupted and the estates will incur additional costs.  Therefore, the Debtors submit that authorizing the continuation of the use of debit, wire, ACH transfers and other similar methods is warranted.

### III.     Payment of Fees and Prepetition Obligations Related to the Bank Accounts Is Appropriate Under Sections 105(a), 363(b), 1107(a) and 1108 of the Bankruptcy Code.

30.     By this Motion, the Debtors seek authority to pay Prepetition Bank Fees. The payment of these fees and amounts is appropriate under sections 105(a), 363(b), 1107(a) and 1108 of the Bankruptcy Code.  The Debtors are operating their businesses as debtors in possession

under sections 1107(a) and 1108 of the Bankruptcy Code, and are therefore a fiduciary "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.* Consistent with a debtor's fiduciary duties to preserve the estate, courts have authorized payment of prepetition obligations pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. *See*, *e.g.*, *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("the bankruptcy court has considerable discretion" in granting motions pursuant to section 363(b)); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that section 363(b) provides a court "broad flexibility" to authorize a debtor to satisfy prepetition claims where supported by a proper business justification); *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("Section 105(a) of the Code provides a statutory basis for the payment of pre-petition claims."). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. at 497.

31.     Section 363(b) of the Bankruptcy Code empowers the Court to allow a debtor, in the exercise of its sound business judgment and after notice and a hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363(b)(1); *see also In re Just For Feet, Inc.*, 242 B.R. at 825 ("The Supreme Court, the Third Circuit, and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."). For a court to approve the use, sale, or lease of estate property under section 363(b) of the Bankruptcy Code, including the payment of prepetition claims, the debtor must "articulate some business

justification, other than mere appeasement of major creditors . . . ." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175; *see also In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a pre-petition claim 'is essential to the continued operation of [the debtor], payment may be authorized'") (citing *In re Lehigh & N.E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981)). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See In re Ionosphere Clubs, Inc.*, 98 B.R. at 175 (stating that the bankruptcy court's prior determination to permit payment of prepetition claims under section 363(b) was justified).

32.    Additionally, section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175. Under section 105(a), the Court "can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *see also In re Just for Feet, Inc.*, 242 B.R. at 825 ("To invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is critical to the debtor's reorganization") (internal quotations omitted); *see also In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996) (recognizing that the doctrine of necessity "permits the bankruptcy court to authorize the payment of prepetition claims prior to confirmation").

33.     Courts in this district have recognized the "necessity of payment" doctrine. *See, e.g.*, *In re Energy Future Holdings Corp.*, 561 B.R. 630, 642-43 (Bankr. D. Del. 2016) ("The Third Circuit has explained that a 'necessity of payment' rule is intended to benefit all parties and is applicable when such payment is critical to the Debtors' reorganization."); *In re Lehigh & N. E. Ry. Co.*, 657 F.2d at 581 ("[T]he 'necessity of payment' doctrine . . . teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [debtor] during reorganization, payment may be authorized even if it is made out of corpus.").

34.     The necessity of payment doctrine is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176; *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); *In re Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[A] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re CoServ, L.L.C.*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use Section 105(a) of the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving

payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process").

35.     Payment of the Prepetition Bank Fees represents a sound exercise of the Debtors' business judgment and is necessary for the preservation of the Debtors' operations and going-concern value of their estates.   Payment of the Prepetition Bank Fees is necessary to maintain the Cash Management System and avoid any disruption in the administration of the Bank Accounts.

36.     Courts in this district have routinely authorized debtors to honor certain prepetition obligations related to their cash management systems.   *See*, *e.g.*, *In re Number Holdings, Inc., et al.*, Case No. 24-10719 (JKS) (May 7, 2024) (D.I. 411) (authorizing debtor to honor certain prepetition obligations related to its existing cash management system*); In re Kidde-Fenwal, Inc.*, Case No. 23-10638 (LSS) (July 7, 2023) (D.I. 245])(same); *In re In re Lincoln Power, L.L.C.*, Case No. 23-10382 (LSS) (Apr. 27, 2023) (D.I. 110) (same); *In re Clovis Oncology, Inc.*, No. 22-11292 (JKS) (Jan. 18, 2023) (D.I. 212) (same);  *In re ExpressJet Airlines LLC*, No. 22-10787 (MFW) (September 15, 2022) (D.I. 106) (same); *In re WB Supply LLC*, No. 21-10729 (BLS) (May 19, 2021) (D.I. 127) (same); *In re Reva Medical, Inc.*, No. 20-10072 (JTD) (Feb. 10, 2020) (D.I. 66) (same); *In re Sienna Biopharmaceuticals, Inc. (a/k/a Sienna Labs Inc.)*, No. 19-12051 (MFW) (Oct. 10, 2019) (D.I. 102) (same).  Accordingly, the Debtors submit that payment of the Prepetition Bank Fees is necessary, appropriate and in the best interest of the Debtors' estate.

**IV.     The Court Should Authorize the Debtors to Use Existing Business Forms.**

37.     To minimize expenses to their estates, the Debtors request authority to continue to use all existing Business Forms, without reference to the Debtors' status as debtors in possession.  Upon depleting of the Debtors' stock, the Debtors will obtain new Business Forms reflecting their status as debtors in possession and referencing the case number of these Chapter

11 Cases.  Additionally, the Debtors will update any electronically produced checks or Business

Forms to reflect the Debtors' status as debtors in possession and include the case number of these

Chapter 11 Cases within 15 days following entry of the Interim Order.

38.     Courts in this district have routinely granted relief similar to the relief

requested herein.  *See, e.g., In re Number Holdings, Inc., et al.,* Case No. 24-10719 (JKS) (May 7,

2024) (D.I. 411) (authorizing the use of existing business forms); *In re Kidde-Fenwal, Inc.*, Case

No. 23-10638 (LSS) (July 7, 2023) (D.I. 245) (same); *In re Lincoln Power, L.L.C.*, No. 23-10382

(LSS) (Apr. 27, 2023) (D.I. 110) (same); *In re Virgin Orbit Holdings, Inc.*, No. 23-10405 (KBO)

(Apr. 26, 2023) (D.I. 151) (same); *In re Clovis Oncology, Inc.*, No. 22-11292 (JKS) (Jan. 18, 2023)

(D.I. 212) (same); *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Jan. 12, 2023) (D.I. 488) (same);

*In re Ector County Energy Center LLC*, No. 22-10320 (JTD) (May 31, 2022) (D.I. 184) (same).

Accordingly, the Debtors submit that the relief requested herein is necessary, appropriate and in

the best interest of the Debtors' estates.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003(b) ARE SATISFIED

39.     In order for a debtor to obtain relief to make payments within 21 days of the

Petition Date, it must establish that making such payments satisfies the requirements mandated by

Bankruptcy Rule 6003—namely, the relief requested is necessary to avoid "immediate and

irreparable harm."  If a debtor's prospect of reorganizing is threatened, or swift diminution in value

of the debtor's estate is likely absent the granting of the requested relief, immediate and irreparable

harm likely exists.  *See In re WorldSpace, Inc.*, 2008 WL 8153639, at \*2 (Bankr. D. Del. Oct. 20,

2008) (finding that relief requested by the debtors was necessary to avoid irreparable harm to the

debtors and their estates because such relief was essential for the continued operation of the

debtors' businesses).

16

40.     Immediate and irreparable harm would result if the relief requested herein is not granted.  Inability to continue their Cash Management System would expose the Debtors to significant additional expenditure of time and resources in order to implement an alternative cash management system, distract the Debtors from an orderly transition into chapter 11 and disrupt the Debtors' operations and relationships with key customers and suppliers.  These effects would have an adverse impact to the Debtors' businesses, thereby causing immediate and irreparable harm. Failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this important juncture.  For the reasons discussed herein, the relief requested is necessary for the Debtors to operate their businesses in the ordinary course and preserve the value of the Debtors' assets and maximize the value of the estates for the benefit of all stakeholders.  Accordingly, the Debtors respectfully submit that it has satisfied Bankruptcy Rule 6003 as it relates to the relief requested herein.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

41.     Given the nature of the relief requested herein, the Debtors respectfully request a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described above, the relief requested is essential to prevent potentially irreparable damage to the Debtors' operations, value and ability to reorganize.

## RESERVATION OF RIGHTS

42.     Nothing contained herein or in the Proposed Orders is intended or shall be construed as: (i) an admission as to the validity, amount or priority of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim; (iii) a promise or requirement to

17

pay any claim; (iv) a waiver of any claim or cause of action of the Debtors that exists against any entity; (v) a ratification or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code; (vi) a waiver of limitation of the Debtors' rights under the Bankruptcy Code, any other applicable law, or any agreement; or (vii) an admission or concession by the Debtors that any lien acknowledged or satisfied under this Motion is valid, and the Debtors expressly reserve and preserve their rights to contest the extent, validity, or perfection, or seek avoidance of, any such lien.

### NOTICE

43.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee (Attn: Joseph Cudia, Esq. (joseph.cudia@usdoj.gov) and Fang Bu, Esq. (fang.bu@usdoj.gov)); (b) counsel to the Debtors' proposed debtor in possession financing lender; (c) the Internal Revenue Service; (d) the Banks; (e) the parties included on the Debtors' consolidated list of their 30 largest unsecured creditors; (f) the United States Attorney's Office for the District of Delaware; (g) the state attorneys general in states where the Debtors are authorized to do business; (h) the Securities and Exchange Commission; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking first-day relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m).  The Debtors respectfully submit that no further notice of this Motion is required under the circumstances.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Interim Order, substantially in the form attached hereto as **Exhibit A**, (b) enter the Final Order, substantially in the form attached hereto as **Exhibit B**, and (c) grant such other and further relief as is just and proper.

Dated: September 3, 2024
      Wilmington, Delaware

Respectfully submitted,

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Robert J. Dehney, Sr.*
Robert J. Dehney, Sr. (No. 3578)
Matthew B. Harvey (No. 5186)
Matthew O. Talmo (No. 6333)
Scott D. Jones (No. 6672)
Erin L. Williamson (No. 7286)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile:  (302) 658-3989
Email:  rdehney@morrisnichols.com
       mharvey@morrisnichols.com
       mtalmo@morrisnichols.com
       sjones@morrisnichols.com
       ewilliamson@morrisnichols.com

*Proposed Counsel to the Debtors and
Debtors in Possession*